UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| RILEY THORNOCK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25cv56 (RCY) |
| | ) | |
| CORPORATION OF THE PRESIDING | ) | |
| BISHOP OF THE CHURCH OF JESUS | ) | |
| CHRIST OF LATTER-DAY SAINTS, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

This matter is before the Court on *pro se* Plaintiff Riley Thornock's Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"),[1] his initially filed proposed Complaint, and various motions that include two Motions to Appoint Counsel and a Motion to Accept Amended Complaint ("Motion to Amend"). For the reasons set forth below, the Court will grant Plaintiff leave to proceed IFP, grant Plaintiff's Motion to Amend but dismiss the Amended Complaint for non-compliance with Federal Rule of Civil Procedure 8, deny Plaintiff's Motions to Appoint Counsel, deny Plaintiff's other pending miscellaneous motions, and order that Plaintiff show cause why the action should not be dismissed in its entirety.

### I.    PROCEDURAL HISTORY

On January 27, 2025, Riley Thornock ("Plaintiff"), appearing *pro se*, submitted his IFP Application, along with a 285-page proposed Complaint and fifteen miscellaneous "motions" that the Court received but did not docket, pending review of Plaintiff's IFP Application and Complaint.[2]   IFP Appl., ECF No. 1; Prop'd Compl., ECF No. 1-2.   The next day, Plaintiff

---

[1] When a party proceeds in district court without prepaying fees or costs, it is said that the party is proceeding *in forma pauperis*.   As such, the Court will refer to Plaintiff's fee waiver application as an "IFP Application."

[2] The bulk of these are not, in fact, motions seeking judicial relief predicated on any rule of law or procedure,

submitted an additional Motion for Full Pacer Access, ECF No. 1-9, and a proposed summons for Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints ("Defendant").    On February 6, 2025, and March 3, 2025, Plaintiff filed Motions to Expedite Ruling on [IFP] Status, ECF Nos. 2, 3, and on March 7, 2025, he filed a Notice of [IFP] Status Granted in Related Case and Request for Consistent Application in this Court, ECF No. 4 (citing Order, *Thornock v. JES Foundation Repair LLC et al.*, 3:25-CV-161-JAG (E.D. Va. Mar. 6, 2025), ECF No. 2 (granting IFP status but ordering the filing of an amended complaint to cure noted deficiencies)).    That same day, Plaintiff filed a "Motion Calling Attention to [Defendant's] Legal Team's Mishandling of This Case [. . .]," ECF No. 5, as well as a "Notice of Recent Development Regarding Church Assistance, ECF No. 6," and an "Addendum to Plaintiff's Notice," ECF No. 7.

On April 14, 2025, Plaintiff filed a Motion to Appoint Counsel, ECF No. 8, and a Motion to Stay Proceedings, ECF No. 9, in the latter of which he asked that the Court "issue a temporary 120-day stay of proceedings, through August 12, 2025," *id.*    He also filed a Motion to File Supporting Materials [relating to ECF Nos. 8, 9] Under Seal.    ECF No. 10.    On June 16, 2025, notwithstanding his earlier-filed Motion to Stay Proceedings, Plaintiff filed a Second Motion to Appoint Counsel, ECF No. 11, and a Motion to Accept Amended Complaint and to Expedite Ruling on [IFP] Petition, ECF No. 12; Prop'd Am. Compl. ECF No. 13.    On June 30, 2025, again notwithstanding his earlier-filed Motion to Stay Proceedings, Plaintiff filed a Petition for Writ of Mandamus with the Fourth Circuit Court of Appeals, complaining, *inter alia*, that the undersigned

---

e.g., Plaintiff's so-called "Motion to Request the Adoption of 'A Proclamation on Love, Compassion, and Charity," Prop'd Mot. 10, and a "Motion to Urge the Church of Jesus Christ of Latter-Day Saints to Consider a Revised Interpretation of Tithing Principles for Legal and Practical Benefit," Prop'd Mot. 12.    Others are duplicative of the relief formally sought in Plaintiff's IFP Application, e.g., the Motion for Fee Waiver Based on Financial Hardship and Systemic Inequities, ECF No. 1-1, or in the Complaint, e.g., the Motion for Temporary Relief to Request Collaboration from Defendant in Covering Rent, Prop'd Mot. 6.

had yet to rule on his pending IFP Application and accumulating motions.    *See In re Riley Thornock*, No. 25-1740 (4th Cir. June 30, 2025).

## II.    IFP QUALIFICATION

Based on the financial information contained in Plaintiff's IFP Application, particularly the gross monthly pay collectively earned by Plaintiff and his wife, the Court was inclined to deny Plaintiff's IFP Application.    *See* IFP Appl. at 2; *accord* Order Denying Leave to Proceed IFP, *Thornock v. Bedford Cnty.*, 3:25-CV-57-DJN (E.D. Va. Jan. 30, 2025), ECF No. 2, *appeal docketed*, No. 25-1180 (4th Cir. Feb. 26, 2025).[3,4]    However, Plaintiff thereafter filed a separate suit, also in the Richmond Division of the Eastern District of Virginia, in which he represented that his wife no longer received any income.    *E.g.*, *Thornock v. JES Foundation Repair LLC et al.*, 3:25-CV-161-JAG (E.D. Va. Mar. 3, 2025).    The Court accordingly deferred action on Plaintiff's pending IFP Application, to see if Plaintiff would file to amend his application and the financial information contained therein, but he did not do so; instead, he filed the Notice of IFP Status Granted in Related Case described *supra*, ECF No. 4.    He has, however, filed additional lawsuits, all accompanied by IFP Applications attesting that he has no current income and otherwise omitting information regarding his wife's current income.    *E.g.*, *Thornock v. City of*

---

[3] The Court may take judicial notice of other actions brought by a plaintiff, as those are matters of public record, *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), as well as the undisputed facts and representations made to the Court in those other judicial proceedings, *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) (internal quotations omitted) (*citing Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).

[4] The Court notes that Plaintiff did originally ask that the Court assign the present case to the "same judge as [the] related case," *Thornock v. Bedford County*, to "ensure consistency in rulings."    *See* Prop'd Mot. 2 (received only).    To that effect, the Court could reasonably deny Plaintiff's IFP Application, just as Judge Novak did in the *Bedford County* case, and let that be the end of its engagement with the remainder of Plaintiff's filings.    Given that Plaintiff later asked for like treatment with that of his IFP Application in the case *Thornock v. JES Foundation Repair LLC et al.*, however, *see* Notice, ECF No. 4, the Court finds that the developments with respect to Plaintiff's (and his wife's) financial situation warrant separate handling from that in the *Bedford County* case, and further that the judicial economy would not be served by reassignment to either Judge Novak or Judge Gibney (who handled the *JES Foundation Repair* case), due to the deficiencies in the proposed Complaint/Amended Complaint, as discussed *infra*.

*Salem*, 3:25-CV-413-RCY (E.D. Va. June 2, 2025); *Thornock v. James*, 3:25-CV-453-DJN (E.D. Va. June 12, 2025).

Despite Plaintiff's failure to file an updated IFP Application with the Court in this action, the Court takes judicial notice of the financial status represented in the IFP Applications filed in Plaintiff's other pending suits.   On that basis, the Court finds that Plaintiff qualifies for *in forma pauperis* status.   Accordingly, Plaintiff's IFP Application, ECF No. 1, will be GRANTED, and the Clerk will be DIRECTED to file Plaintiff's Complaint.

### III.   SCREENING STANDARD

When a plaintiff is granted authorization to proceed *in forma pauperis*, the Court is obligated, pursuant to 28 U.S.C. § 1915(e)(2), to screen the operative complaint to determine, among other things, whether the complaint states a claim on which relief may be granted.   *See* 28 U.S.C. § 1915(e)(2) (explaining that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").   A *pro se* complaint should survive only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).   Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party."   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.   ANALYSIS

### A.   Plaintiff's Motions Ancillary to Screening Analysis

Plaintiff has filed several motions that need to be addressed before the Court commences with screening pursuant to 28 U.S.C. § 1915.

#### 1.   Motion to Stay Proceedings

As discussed above, in April, Plaintiff filed a Motion to Stay Proceedings, asking that the Court impose a stay through August 12, 2025, "based on Plaintiff's current medical incapacity, logistical hardship, and ongoing treatment for traumatic brain injury and post-concussive dysfunction."  Mot. Stay 1–2, ECF No. 9.  However, on June 16, 2025, Plaintiff asked for expedited ruling on his IFP Application, *see* ECF No. 12, and then on June 30, 2025, Plaintiff filed his Petition for Writ of Mandamus with the Fourth Circuit, in which he complained about this Court's lack of action on his pending IFP Application, *see In re Riley Thornock*, No. 25-1740. Based on the foregoing, the Court deems the Motion to Stay Proceedings as constructively withdrawn, and as such it will deny the Motion without prejudice.

#### 2.   Motion to Accept Amended Complaint

In June, Plaintiff filed a Motion to Accept Amended Complaint, ECF No. 12, in which he represented that some of the grievances articulated in his original proposed Complaint had been addressed by Defendant, insofar as Defendant provided Plaintiff "some limited aid."   Mot. Amend 2.   The proposed Amended Complaint is also sixty-six pages, which does represent a paring-down from the original proposed Complaint's egregious length of 285 pages.

The Fourth Circuit has stated that leave to amend "shall be freely given when justice so requires" and "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been

futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509 (4th Cir. 1986)).    Here, given the procedural posture of the case, Plaintiff will be allowed to amend, but neither this amendment nor the requirement of liberal construction means that the Court can skip the necessary step of screening and ignore a deficient complaint, *Weller v. Dep't of Soc. Servs*., 901 F.2d 387, 390–91 (4th Cir. 1990) ("[t]he 'special judicial solicitude' with which a [court] should view such pro se complaints does not transform the court into an advocate"); and the Court reiterates that it is not obliged to ferret through a complaint, searching for viable claims, *see Holsey v. Collins*, 90 F.R.D. 122, 123 (D. Md. 1981) (it is not a court's "burden . . . to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *see also Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) ("a district court should not 'assume the role of advocate for the pro se litigant,' and "may 'not rewrite' a pro se party's pleadings); *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) ("While the courts liberally construe pro se pleadings as a matter of course, judges are not also required to construct a party's legal arguments for him" or "divine" what the plaintiff is trying to achieve or say (citation omitted)).    Accordingly, the proposed Amended Complaint, ECF No. 13, will be screened in lieu of the now-superseded original proposed Complaint.

    3.   Motions to Appoint Counsel

      Plaintiff asks that this Court appoint counsel to assist with the litigation of his claims, "due to medical impairment and case complexity."    Mot. Appoint Counsel, ECF No. 8; 2d Mot. Appoint Counsel, ECF No. 11.    In support of his motions, Plaintiff represents that a recent head injury "has resulted in neurological impairment, including difficulty concentrating, short-term memory limitations, and reduced ability to manage and litigate complex federal litigation."    Mot. Appoint Counsel 2; *see also* 2d Mot. Appoint Counsel 4.

6

This Court's power to appoint counsel in civil actions under 28 U.S.C. § 1915(e)(1) is discretionary, and, to qualify, an indigent claimant must present "exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989); *accord Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances exist where a "*pro se* litigant has a colorable claim but lacks the capacity to present it." *See Whisenant*, 739 F.2d at 163; *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978); *Ferrer v. Garasimowicz*, No. 1:13cv797, 2013 U.S. Dist. LEXIS 139939, at *3 (E.D. Va. Sept. 27, 2013) ("exceptional cases" may be found in "meritorious cases involving particularly complex factual or legal issues or where a litigant is unable to represent [himself] adequately"). Here, the Court has yet to screen the Amended Complaint Plaintiff seeks to file in order to determine if Plaintiff has stated a colorable claim. Accordingly, Plaintiff's Motions to Appoint Counsel are premature and will be denied without prejudice.

    4.   Motion to File Supporting Materials Under Seal

Because the Court will deny both Plaintiff's Motion to Stay and Motions to Appoint Counsel without engaging with the underlying facts relating to Plaintiff's medical condition(s) and treatment, the Court will deny Plaintiff's related Motion to File Supporting Materials Under Seal as moot.

    5.   Other Miscellaneous Motions

Plaintiff's remaining miscellaneous "motions" will all similarly be denied either as (1) moot in light of the Court's other present rulings, *e.g.*, Plaintiff's Motion for Fee Waiver Based on Financial Hardship and Systemic Inequities, ECF No. 1-1; Plaintiff's Motion for Expedited Consideration, Prop'd Mot. 9 (received only); Plaintiff's Motions for Expedited Ruling on IFP Application, ECF Nos. 2, 3, (2) premature, *e.g.*, Plaintiff's Motion for Protective Order, Prop'd Mot. 5 (received only); Motion for Mediation or Settlement, Prop'd Mot. 7 (received only); Motion

for Discovery, Prop'd Mot. 8 (received only), or (3) improper filings that do not constitute actionable requests for relief, *e.g.*, Plaintiff's Motion to Request the Adoption of "A Proclamation on Love, Compassion, and Charity, Prop'd Mot. 10 (received only); Plaintiff's Motion Calling Attention to the Church's Legal Team's Mishandling of This Case, ECF No. 5; *see also* Prop'd Mots. 4, 6, 11, 12, 13, 14, 15 (all received only).

With these matters resolved, the Court now turns to the task of screening the operative complaint in accordance with 28 U.S.C. § 1915(e).

**B.  Plaintiff's Amended Complaint is Subject to Dismissal for Violating Federal Rule of Civil Procedure 8**

Although Plaintiff filed his Amended Complaint *pro se* and the Court is therefore compelled to construe the pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007),[5] "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *overruled on other grounds by Britt v. Dejoy*, 45 F.4th 790, 795–96 (4th Cir. 2022).   Notably here, Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each averment of a pleading be "simple, concise, and direct."   Fed. R. Civ. P. 8(a)(2), (e)(1).   "District judges are not mind readers," nor is their role to serve as "an advocate seeking out the strongest arguments and most successful strategies for a [*pro se*] party."

---

[5] The Court notes that *Erickson*'s liberal-construction requirement for *pro se* pleadings predates the advent of artificial intelligence ("AI") drafting tools, which are being used with increasing prevalence by *pro se* parties, in particular.   *See Powhatan Cnty. Sch. Bd. v. Skinger*, No. 3:24-CV-874 (REP), 2025 U.S. Dist. LEXIS 104564, at *19–24 (E.D. Va. June 2, 2025) (collecting cases to illustrate the growing issue and accompanying concerns).   Such tools both increase *pro se* litigants' ability to draft voluminous pleadings and increase the odds that such pleadings contain fractured assertions and "hallucinated" legal propositions, which courts must wade through in construing claims.   *Id*. While its analysis does not ultimately turn on this point, the Court notes that Plaintiff has acknowledged utilizing AI to assist in the drafting of his numerous pleadings, and it respectfully proposes that the time may be near for an exception to the *Erickson* liberal-construction rule, where a *pro se* individual relies on AI to draft pleadings and thus blurs the line between what is a good faith *pro se* assertion of an actionable claim and what is a computer generated morass that only serves to waste court time and resources.

8

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Without the guardrails of Rule 8, courts would be left to expend precious judicial resources sifting through narrative and hyperbole in an effort to identify and address the points a litigant endeavors to make, while also working to avoid the improper task of devising arguments on behalf of the overly verbose litigant. *See Powhatan Cnty. Sch. Bd.*, 2025 U.S. Dist. LEXIS 104564, at *20–21; *Holsey v. Collins*, 90 F.R.D. 122, 124, 129 (D. Md. 1981) (dismissing voluminous complaint and accompanying supplemental filings where potentially cognizable claims were "obscured . . . by the employment of a 'shotgun pleading' technique," and, in the interest of judicial economy, directing the *pro se* plaintiff to file an amended complaint "to eliminate the blunderbuss allegations so that his possibly meritorious claims can be reached").

Plaintiff's Amended Complaint—while significantly shorter than the originally filed proposed Complaint—contains no "short and plain statement," nor is it "concise and direct." Instead, the convoluted and redundant narratives and intersecting legal and doctrinal conclusions asserted by the Plaintiff give rise to a landscape where, to determine the viability of Plaintiff's claims, the Court would have to engage in the improper task of articulating essential elements and devising arguments on Plaintiff's behalf. *Beaudett*, 775 F.2d at 1278; *Powhatan Cnty. Sch. Bd.*, 2025 U.S. Dist. LEXIS 104564, at *20–21. Plaintiff's Amended Complaint is accordingly subject to dismissal on this ground alone.

## C.  Plaintiff's Amended Complaint Suffers from Other, Substantive Deficiencies

In addition to its clear violation of the pleading requirements of Rule 8, the Amended Complaint also suffers from two other substantive deficiencies. First, Plaintiff's jurisdictional allegations are deficient. Second, Plaintiff's legal claims are either conclusory or unsupported by the law on which they are purportedly based.

9

1.   Jurisdictional Pleading

Plaintiff asserts that this Court has subject matter jurisdiction over the instant controversy based on 28 U.S.C. § 1332(a), "as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties."   Am. Compl. 5, ¶ 1, ECF No. 13.   To invoke the Court's diversity jurisdiction, Plaintiff (even as a *pro se* litigant) must properly allege the citizenship of the parties.   An individual's "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile."   *Axel Johnson, Inc. v. Carroll Carolina Oil Co*., 145 F.3d 660, 663 (4th Cir. 1998).   Citizenship cannot be inferred from simple residence, *id.*, as "'domicile' requires bodily presence in a place and also an intention to make it one's domicile," *Comm'r of Internal Revenue v. Nubar*, 185 F.2d 584, 587 (4th Cir. 1950) (internal quotation marks and citations omitted); s*ee also* Black's Law Dictionary 501, 1310 (7th ed. 1999) (defining residence as "the act or fact of living in a given place for some time," while domicile is separately defined as "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere").   Meanwhile, Defendant Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints, as an ostensible corporation, "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."   28 U.S.C. § 1332(c)(1).

Plaintiff's only jurisdictional allegations are that "Plaintiff is a resident of Virginia, and the Defendant . . . is headquartered in Salt Lake City, Utah, with its primary business operations and leadership based therein."   Am Compl. 5, ¶ 1.   Neither of these allegations satisfy Plaintiff's obligation to establish diversity jurisdiction.   *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (party asserting jurisdiction bears the burden of establishing jurisdiction).

And, as Plaintiff's claims are all rooted in state law, *see* Am. Compl. 32–56, ¶¶ 56–80, no alternative basis for jurisdiction is apparent on the face of the Amended Complaint.

    2.   Conclusory and/or Unsupported Claims

Finally, Plaintiff presents only vague and conclusory statements of claims, which prevents the Court from adequately considering those claims and determining whether Plaintiff states a claim on which the Court can grant relief.   In the most general of terms, this action arises from the fact that Plaintiff, a faithful member of the Church of Jesus Christ of Latter-day Saints ("the Church"), paid religious tithes and otherwise "contribut[ed] deeply to the Church's spiritual and financial mission" for years, and yet, when Plaintiff turned to the Church for aid in a time of family need, "the Church's local representative delayed aid, deflected accountability through spiritual rhetoric, and responded with overt hostility when the Plaintiff requested transparency."   *Id.* at 2. While eventually some aid was rendered to Plaintiff, the Church did not respond to Plaintiff's request that it "acknowledge the systemic issue of charitable hoarding and communicate its intent to protect future families from similar mistreatment."   *Id.* at 2–3.   As a result, Plaintiff asserts the following as his claims against Defendant:   Breach of Implied Contract (Count I); Breach of Fiduciary Duty (Count II); Constructive Fraud (Count III); Breach of Duty of Good Faith and Fair Dealing (Count IV); and Unjust Enrichment (Count V).   *Id.* at 32–56, ¶¶ 56–80.

While Plaintiff references general principles of state common law in support of these claims, *e.g.*, *id.* ¶¶ 56, 61, 66, 71, 76, his assertions that such principles can be applied to a religious practice such as tithing are wholly conclusory.   And, since all of Plaintiff's claims "focus[] on broken implied promises related to tithing and charitable duty," *id.* at 3, this constitutes a critical deficiency.   Plaintiff's assertion that he "does not seek to litigate doctrine or attack faith," *id.* at 3, is entirely undercut by the fact that the Amended Complaint dedicates seven pages to discussing

the "Doctrinal Ambiguity Regarding Tithing Obligations," *id*. at 19–26, ¶¶ 30–44.   Plaintiff's "Supporting Caselaw" section is no benefit, either.   *Id*. at 27–31, ¶¶ 45–55.   The cases cited either do not support the propositions for which he cites them, *e.g.*, *id*. ¶ 45 (citing *Young v. Facebook, Inc*., 790 F. Supp. 2d 1110 (N.D. Cal. 2011), for the proposition that "Courts have long recognized that implied contractual obligations can arise where religious institutions receive funds under representations—either verbal, written, or deeply embedded in practice and tradition—that such funds will be used for specific purposes"), or they appear to not exist entirely, *e.g.*, *id*. ¶ 47 (citing *Kieras v. Michigan Catholic Conference*, 149 F. App'x 485 (6th Cir. 2005), but the Court can find no case by that name, and the reporter citation returns the case *Hudgens v. New Equip. Leasing Inc*., 149 F. App'x 480 (7th Cir. 2005), a bankruptcy case).

Accordingly, the Court finds that Plaintiff has failed to identify a valid basis for his claims, either by way of common law or statute, and his conclusory assertions that his claims sound in state law contract and tort principles are insufficient to render the claims viable.   As a result, he has failed to state any claim on which the Court may grant relief.

## V.   CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's IFP Application and grant Plaintiff's Motion to Amend but otherwise deny Plaintiff's miscellaneous motions.   And, in light of the Amended Complaint's failure to adhere to Rule 8, failure to properly assert the basis for this Court's exercise of subject matter jurisdiction, and failure to state a claim on which relief may be granted, the Court finds that dismissal of this action is warranted.   However, in deference to Plaintiff's *pro se* status, the Court will not yet dismiss this action.   Instead, Plaintiff will be

ORDERED to SHOW CAUSE why this action should not be dismissed by filing a Second Amended Complaint addressing the deficiencies noted.

An appropriate Order articulating the rulings from this Memorandum Opinion will issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Date:  July 9, 2025
Richmond, Virginia